John P. Harrington (5242)
Steven G. Jones (15063)
**HOLLAND & HART LLP**
222 S. Main Street, Suite 2200
Salt Lake City, Utah  84101
Telephone:  (801) 799-5800
Fax:  (801) 799-5700
jharrington@hollandhart.com
sgjones@hollandhart.com

John Mejia (13965)
Leah Farrell (13696)
**AMERICAN CIVIL LIBERTIES UNION OF UTAH**
355 North 300 West
Salt Lake City, Utah 84103
Telephone:  (801) 521-9862
Fax:  (801) 532-2850
jmejia@acluutah.org
lfarrell@acluutah.org

*Attorneys for Plaintiffs and Class Members*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COLTON GUY REMICK; an individual; SKYLAR W. GARNER, an individual; BRYCE TUCKER LLOYD, an individual; ANTHONY MURDZAK, an individual; COLTER RICKS, an individual; BRANDON TIMMS, an individual; and JOHN DOES 1-100;<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF UTAH and SEAN D. REYES, in his capacity as Attorney General of the State of Utah,<br><br>Defendants. | **PLAINTIFFS' MEMORANDUM REGARDING IMPACT OF *COX CASE* NOTICE OF APPEAL ON *REMICK CASE***<br><br>**Oral Argument Requested**<br><br>Case No. 2:16-cv-00789-DN<br><br>Judge David Nuffer |

Plaintiffs Colton Guy Remick, Skylar W. Garner, Bryce Tucker Lloyd, Anthony Murdzak, Colter Ricks and Brandon Timms ("Plaintiffs"), by and through their counsel, file this memorandum requested by the Court[1] regarding the potential impact of the appeal filed in the

---

[1] Docket no. 40, filed December 8, 2016.

case captioned *William Cox et al. vs. State of Utah et al.*, in the United States District Court for the District of Utah, Civil No. 2:16-cv-53 (Judge Dee Benson) ("*Cox*").

## INTRODUCTION

The Court requested counsel to brief whether the appeal of *Cox* impacts the stay currently in place in this case ("*Remick*") and if there is "any need to avoid potential for conflicting rulings with the 10th Circuit Court of Appeals." The short answer is no, the *Cox* appeal poses little probability of impacting *Remick*. The District Court in *Cox* granted the State's motion to dismiss based on the pleadings' insufficiency. To the extent a common question of unresolved law exists between *Cox* and *Remick*, the issue is not before the Tenth Circuit and it therefore remains unlikely that the Tenth Circuit will address that question.

On the case-specific level, *Cox* will not have any *res judicata* effect on the *Remick* Plaintiffs. Claim preclusion involves the same parties and the same cause of action where there was a full opportunity for the parties to litigate their interests. The parties in the two cases are entirely different with the exception that one of the defendants (i.e., the State of Utah) is the same. The remedies sought in the two cases are different. Most importantly, the *Cox* Plaintiffs cannot fairly be said to be representing the interests of the *Remick* Plaintiffs. Issue preclusion (also known as *collateral estoppel*) is not applicable because that legal precept prevents parties from relitigating facts and issues in a second suit that were fully litigated in the first suit. Once a party has had his or her day in court and lost, he or she does not get a second chance to prevail on the same issues. The parties are not the same in the two cases and the facts as alleged in *Cox* and *Remick* are different, with the *Remick* plaintiffs pleading an extensive and plausible factual basis to support their claims against the State and State Attorney General, and the *Cox* plaintiffs pleading facts that the Court found general and conclusory.

On the macro level, it is true that both cases implicate the Utah indigent defense system and both assert that a Sixth Amendment violation can arise based on the inadequacy of appointed counsel's pre-trial representation before a negative final outcome occurs in a criminal case. The latter is a proposition of law that has not yet been recognized in the Tenth Circuit. Judge Benson, however, did not reach the question of whether such a cause of action exists. Instead, Judge Benson assumed that the case of action *does* exist for purposes of his analysis and faulted the *Cox* complaint as falling woefully short in pleading it. Continuing *Remick*'s stay could only be justified out of concern that the Tenth Circuit might go beyond the scope of *Cox*'s holding and instead choose to reach the constitutional question unresolved by the District Court. As discussed further below, however, Tenth Circuit practice stands to the contrary. Indeed, the Tenth Circuit has a well-established practice of deciding such cases by likewise assuming, but not deciding, unsettled constitutional questions when they are not squarely before the Court.

Maintaining the stay in *Remick* based on the remote possibility that the Tenth Circuit will eschew its standard approach would be ill-advised and would frustrate the *Remick* Plaintiffs' access to this Court. Keeping the stay will also cause continuing and irreparable harm to indigent defendants by preventing them from expeditiously prosecuting their class-action claim for a declaratory judgment.

## FACTUAL BACKGROUND

The American Civil Liberties Union of Utah ("ACLU") has, for close to a decade, publicly raised the multiple systemic flaws in the indigent defense system in Utah to every possible shareholder in the system, i.e., legislative, executive, the Judicial Council of Utah, Utah

State Bar, non-profit organizations, etc. With no meaningful impact in sight from these efforts,[2] the ACLU filed a lawsuit on behalf of several affected indigent defendants from across Utah in the Utah State Court on June 21, 2016.[3] Defendants removed *Remick* to federal court on July 13, 2016.[4]

Six months prior to the filing of *Remick*, *Cox* was filed on January 22, 2016, along with a motion for a temporary restraining order.[5] A few days after the case was filed, with no hearing, the *Cox* Court denied the motion for a temporary restraining order.[6] Approximately six weeks later, the Attorney General Office filed a motion to dismiss in *Cox*.[7] When *Remick* was removed to federal court, the *Remick* Defendants filed a Motion to Consolidate with *Cox* on July 14, 2016.[8] The *Remick* Plaintiffs, along with the *Cox* Plaintiffs, opposed the consolidation in *Cox*.[9]

Even with a motion to consolidate *Remick* with *Cox* pending, the *Remick* Defendants filed a motion to dismiss in *Remick*. In that Motion to Dismiss, the *Remick* Defendants argued that a pre-conviction cause of action under the Sixth Amendment was not cognizable, and that various cases from other jurisdictions holding otherwise were wrong.[10] The *Remick* Defendants

---

[2] In Footnote No.1 of his Order dismissing *Cox*, Judge Benson remarked on the creation of the Utah Indigent Defense Commission, §§ 77-32-801 *et seq.,* UTAH CODE ANN. The Utah Indigent Defense Commission is charged with making recommendations and suggestions and providing grants to government entities in Utah providing indigent criminal defense. The Commission has no binding rulemaking authority. In effect, it is an entity that promises, at best, incremental improvements over a period of years to a broken system that is in need of immediate systemic fixes.

[3] *Remick*, docket no. 2-1.

[4] *Id.* docket no. 2.

[5] *Cox*, docket nos. 2 and 3.

[6] *Id.* docket no. 13.

[7] *Id.* docket no. 28.

[8] *Id.* docket no. 41.

[9] *Id.* docket nos. 47 and 47.

[10] *See generally*, *Remick*, docket no. 28 at 6–12.

argued that any claim related to ineffective counsel could only be judged after a conviction using the *Strickland v. Washington,* 466 U.S. 648 (1984) analysis, that plaintiffs had to be convicted to have standing, and that a such a claim did not ripen until conviction.[11]  The *Remick* Defendants argued in the alternative that even if a pre-conviction cause were viable, it was not plead sufficiently.[12]

After the *Remick* Plaintiffs filed a motion to certify a class, but before they opposed the motion to dismiss, the Court entered a *sua sponte* order staying all briefing deadlines pending a ruling to the Motion to Consolidate in *Cox*.[13]  Judge Benson entered his Order on November 7, 2016 granting the Motion to Dismiss *Cox* and denying the Motion to Consolidate as moot.[14]

## JUDGE BENSON'S ORDER

In granting the Motion to Dismiss *Cox*, Judge Benson reasoned:

(1)     The U.S. Supreme Court and the Tenth Circuit have not yet recognized a pretrial cause of action for constructive effective assistance, stating that "the Court *does not reach the issue* of whether such a cause of action should be recognized in this District . . ."[15]

(2)     Judge Benson nonetheless assumed for the purpose of the analysis that the cause of action did indeed exist, extensively reviewing cases from other jurisdictions which had recognized the cause of action and not providing any reason to go against that emerging consensus.[16]  Proceeding from the assumption that the weight of the authority was correct in

---

[11] *See id*. at 6–19.

[12] *See id*. at 12.

[13] *Id*. docket no. 31.

[14] *Cox*, docket no. 58.

[15] *Id.* (emphasis added).

[16] *See id.* at 6–10.

5

recognizing the cause of action, Judge Benson reasoned that the *Cox* Plaintiffs had fallen short of pleading the facts that would be needed to successfully invoke the assumed cause of action, as their allegations were "conclusory and general," and failed to meet the "hefty burden" a plaintiff would need to meet.[17]

Judge Benson went on to also analyze *Cox's* claims under the "traditional ineffective assistance" of counsel test found in *Strickland*, which requires, among other things, that a negative result must have occurred in the criminal case that was caused by ineffective counsel.[18] He found that the *Cox* Plaintiffs had also failed to assert sufficient facts to sustain that cause of action.[19]

Judge Benson also held that the *Cox* complaint had failed to adequately allege either standing or ripeness.[20] Judge Benson reasoned that standing and ripeness did not attach on any post-conviction claims because the plaintiffs had not been convicted and had not alleged inadequate counsel, and that the pleadings did not adequately allege standing on any pre-conviction claims due to pleading failures.[21]

## LEGAL ARGUMENT

### A. The *Cox* Appeal Will Have No Res Judicata or Collateral Estoppel Effects on *Remick*

Res judicata is oftentimes referred to as claim preclusion and has long been accepted as an important element of the American judicial system. In the Tenth Circuit, claim preclusion bars a claim when three elements exist: (1) a judgment on the merits in the earlier action; (2)

---

[17] *Id.* at 12.

[18] *Id.* at 13.

[19] *Id.*

[20] *Id.* at 14–15.

[21] *See id.*

identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits.[22]  In *Cox*, there has been no judgment on the merits of the complaint, only a dismissal based on the inadequacy of the pleadings, and certainly no adjudication has occurred in *Remick*. The plaintiffs in the two cases are completely different and unrelated.  There is similarity between the causes of action, but the remedies are significantly different in that the *Remick* Plaintiffs seek a declaratory judgment as opposed to the injunctive relief requested by *Cox* Plaintiffs.  Failing to fulfill the prerequisites for the application of claim preclusion, any appellate decision arising from *Cox* will have no preclusive effect on the claims asserted by *Remick* Plaintiffs.

In contrast to claim preclusion (which bars identical causes of action), issue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim.  Issue preclusion applies when the following elements are present:  "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action."[23]  Issue preclusion "prevents parties or their privies from relitigating facts and issues in the second suit that were fully litigated in the first suit."[24]

---

[22] *Mitchell v. City of Moore*, 218 F.3d 1190, 1202 (10th Cir. 2000). *See also Utah Republican Party v. Cox*, 177 F.Supp.3d 1343, 1357 (D. Utah 2016).

[23] *Park Lake Resources LLC v. U.S. Dep't of Ag.*, 378 F.3d 1132, 1136 (10th Cir. 2004); *Cook v. Aagard*, 2012 WL 5903848, *7 (D. Utah, November 26, 2012).

[24] *Oman v. Davis Sch. Dist.,* 194 P.3d 956, 965 (Utah 2008) (citations omitted).

Only one of the four required conditions for applying issue preclusion even arguably exists here, if at all.  That is, the Order of November 7, 2016 in *Cox* assumed, but did not reach the merits of whether, a cause of action for pre-conviction violation of the 6th Amendment exists in the Tenth Circuit.  Instead, the precise issue resolved in *Cox* was whether the complaint in that case was sufficient to state any claim, which is not a relevant question before the Court in *Remick*.  The other three conditions are not met either.  The *Remick* Plaintiffs are not parties to *Cox* and have had no involvement in that lawsuit (other than resisting being joined into it) or the decision to appeal the dismissal, which came at the pleading stage.  As of this time, the *Remick* Plaintiffs have not had a full and fair opportunity to litigate their claims on behalf of the class of indigent defendants injured by the actual and constructive denial of their 6th Amendment rights.  Issue preclusion is inapplicable in these circumstances.

### B. Prejudice to the *Remick* Plaintiffs Outweighs Any Judicial Economy Gained by Staying *Remick*

The underlying policy of issue and claim preclusion is to shield litigants from having to relitigate issues and claims that have already been decided between the same parties.  Finality of court decisions also reduces the possibility that a litigant will obtain a different judgment before a different judge concerning the same issues or claims that have already been decided (i.e., inconsistent judgments).  The third prong of the policy is to promote judicial efficiency by not having to revisit claims and issues again and again.  The Utah Supreme Court has ruled that the purposes of issue preclusion include (1) preserving the integrity of the judicial system by preventing inconsistent judicial outcomes; (2) promoting judicial economy by preventing

previously litigated issues from being relitigated; and (3) protecting litigants from harassment by vexatious litigation.[25]

Every court seeks to avoid wasting its time or that of the parties, even if the concepts of claim and issue preclusion are inapplicable. But in this instance, continuing the stay of the proceedings in deference to the *Cox* appeal will profoundly prejudice the *Remick* Plaintiffs. In effect, this Court is considering whether to shelve *Remick* while the parties in *Cox* brief the issues and the Tenth Circuit issues a written decision. In practical terms, waiting for the *Cox* appeal to be concluded could take two years or more. It is unfair and unjust to ask the *Remick* Plaintiffs to wait for years before they can even present their class-action lawsuit to this Court. In the near six-month delay they have endured since they first filed this case (which has included over three month's delay based on the court-imposed stay), the facts on the ground for the named *Remick* Plaintiffs have changed considerably. Because the named plaintiffs are indigent defendants who are pressured to accept plea agreements and move on with their lives as best they can, many will only benefit in this case by obtaining an order addressing the flaws in the system that keep repeating due to Defendants' actions, rather than gaining any relief in the criminal proceedings they sued Defendants over. As alleged in great detail in the Complaint, the constitutional defects permeating the indigent defense system are ongoing and unrelenting. No meaningful remedy is in sight.[26] To delay *Remick* is to deny a timely determination of the constitutionality of the system. Every day, new indigent defendants are denied their individual rights under the United States and Utah Constitutions.

---

[25] *Buckner v. Kennard*, 99 P.3d 842, 847 (Utah 2004).

[26] The District Court noted in its Order that the Utah Legislature had enacted the Utah Indigent Defense Commission (the "UIDC"). The UIDC can only recommend changes; it is powerless to implement changes on its own. Study groups, investigations and commissions do not constitute actual changes to the Utah indigent defense system.

Continuing the stay must be based on the untenable premise that the Tenth Circuit opinion will actually reach the constitutional question that *Cox* pointedly refused to decide. The real and tangible prejudice to the *Remick* Plaintiffs cannot be justified or excused by the speculation that another case with different parties alleging different facts in vastly different complaints is going to definitively resolve the matter. Judicial efficiency and consistency cannot abrogate the constitutional rights of an affected class of individuals.

The questions of the applicability of *Strickland*, along with standing and ripeness, are also, on their face, common issues between *Cox* and *Remick*. But in reality, those issues are directly tied with the question of whether a pre-conviction cause of action exists. That is, if a court decides such an action exists, *Strickland* cannot apply because *Strickland* requires an actual negative outcome. Likewise, if such an action exists, standing and ripeness attach when a defendant is assigned a public defender in a failing defense system.

### C.   The Doctrine of Judicial Restraint Makes It Highly Unlikely the Tenth Circuit Will Rule on the Common Issue in the Cox Case Appeal

Judicial restraint, particularly with respect to constitutional issues, is evident in the District Court's Order of November 7, 2016,[27] wherein the Court refused to decide whether the pre-conviction cause of action for deprivation of an individual's rights under the 6th Amendment is a viable claim. Instead, the District Court curtailed its decision to the sufficiency of the pleadings while presupposing that such a cause of action exists given the many cases acknowledging it. The fundamental principle of judicial restraint requires that courts neither "'anticipate a question of constitutional law in advance of the necessity of deciding it'" nor

---

[27] *Cox*, docket no. 58.

"'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'"[28]

The Tenth Circuit will almost certainly take the exact approach as the District Court when hearing the appeal and will assume the cause of action to rule on the sufficiency of the pleadings. It is highly unlikely that the Court of Appeals will decide the constitutional question, especially because the district court expressly avoided directly ruling on it. For example, in *McCormack v. Farrar*,[29] the Court noted that the Tenth Circuit had not yet established whether the doctrine of continuing violation applied in Section 1983 cases and declined to reach the question. Nonetheless, the Court applied the doctrine in its analysis, concluding that "[a]ssuming, without deciding, that the continuing violation doctrine applies to § 1983 actions, the doctrine does not save any of McCormick's claims from being time-barred."[30]

There is nothing about the *Cox* case that would give the Tenth Circuit reason to avoid this typical practice. Indeed, because the question before the Court is one of constitutional import, one would expect the Court to decide the question of a pre-conviction cause of action under the 6th Amendment on the narrowest ground possible.[31] Even if the Court were to find fault in the *Cox* ruling sufficient to vacate, it would likely remand the matter without deciding the 6th

---

[28] *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 483–484 (1936) (sometimes referred to as the "Ashwander Rules" articulated by Justice Louis D. Brandeis in the concurring opinion); *U.S. v. Cusumano,* 83 F.3d 1247, 1250 (10th Cir. 1996).

[29] 147 Fed. Appx. 716, 719-20 (10th Cir. Aug. 30, 2005) (unpublished).

[30] *Id.* at 720. *See also Oliver v. Maxwell*, 185 F.3d 874, *2 (10th Cir., June 5, 1999) (unpublished) ("assuming, without deciding", that actual innocence standard applied to claim, rejecting claim because it made no colorable allegations of actual innocence.).

[31] *See United States v. Cusumano,* 83 F.3d 1247, 1250 (10th Cir.1996) (en banc) ("The Supreme Court has long endorsed, if not always adhered to, the notion that federal courts should address constitutional questions only when necessary to a resolution of the case or controversy before it. This is a 'fundamental rule of judicial restraint.'") (quoting *Three Affiliated Tribes v. Wold Engineering,* 467 U.S. 138, 157 (1984)).

Amendment question. If the Tenth Circuit upholds the District Court, it would likely do so exclusively on the basis of the pleadings' insufficiency.

### D. By Declining to Reach the Motion to Consolidate, *Cox* Impliedly Ruled that the *Remick* Complaint is Significantly Different

In moving for consolidation, the *Cox* Defendants insisted that the two complaints were similar enough for the Court to either consolidate the cases or transfer *Remick*.[32] In declining to even reach the issue, the *Cox* Court impliedly rejected this contention. That is, had the *Cox* Court found the *Cox* Defendants' arguments about the alleged similarities compelling, it could have, for judicial economy and efficiency, consolidated or transferred the cases for a common disposition. It did not, and this decision was entirely appropriate given the in-depth and detailed factual allegations strongly supporting the claims in *Remick* which are not found in the *Cox* complaint. The *Remick* Plaintiffs should not have to relitigate an issue that has already been presented to and ruled upon by the *Cox* court.

## CONCLUSION

Despite the arguments *supra,* if this Court still harbors concerns about the efficiency of litigating *Remick* while *Cox* is on appeal, there is an intermediate step that might accommodate those concerns. The Court could lift the stay and allow *Remick* to proceed, particularly with respect to the Defendants' Motion to Dismiss the *Remick* complaint. During the time in which the Motion to Dismiss is briefed, argued and then ruled upon, the status of the *Cox* appeal to the Tenth Circuit would become more lucid, including the Docketing Statement to be filed by the appellant. After hearing and deciding the Motion to Dismiss, this Court may then revisit the issue of whether *Remick* should be stayed in light of a more developed appellate record. This

---

[32] *Cox*, docket no. 41.

Court has the authority to institute such a stay at a later date.  But it is imperative that *Remick* proceed past the pleading stage and on to the Motion to Certify Class.

In summary, the devastating effect of continuing the *Remick* stay compared to the low possibility that *Cox* will result in a controlling Tenth Circuit opinion on one of the claims in *Remick* and validate such a stay necessitates that the stay be lifted and that this case proceed immediately.

DATED this 15th day of December, 2016.

                                              HOLLAND & HART LLP


                                              /s/ John P. Harrington
                                              John P. Harrington
                                              Steven G. Jones

                                              AMERICAN CIVIL LIBERTIES UNION OF UTAH
                                              John Mejia
                                              Leah Farrell
                                              *Attorneys for Colton Guy Remick, Skylar W. Garner, Bryce Tucker Lloyd, Anthony Murdzak, Colter Ricks, Brandon Timms and Class Members*

9409060_1.docx