# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COLTON GUY REMICK, an individual; SKYLAR W. GARNER, an individual; BRYCE TUCKER LLOYD, an individual; ANTHONY MURDZAK, an individual; COLTER RICKS, an individual; BRANDON TIMMS, an individual; and JOHN DOES 1-100;<br><br>          Plaintiffs,<br><br>v.<br><br>STATE OF UTAH; and SEAN D. REYES, in his capacity as Attorney General of the State of Utah,<br><br>          Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:16-cv-00789-DN-DBP<br><br>District Judge David Nuffer |

Plaintiffs, on behalf of themselves and others similarly situated, initiated this case to remedy the State of Utah's alleged failure to provide constitutionally adequate legal representation to indigent adults accused of crimes in the State's district and justice courts.[1] Defendants moved to dismiss Plaintiffs' Amended Complaint, arguing that Plaintiffs lack standing, have not named the proper defendants, and fail to state a cognizable claim upon which relief may be granted.[2]

Because Plaintiffs fail to allege sufficient facts to establish their standing to sue or to state a claim, Defendants' Motion to Dismiss[3] is GRANTED.

---

[1] First Amended and Supplemental Class Action Complaint for Declaratory Relief ("Amended Complaint") ¶ 1, docket no. 46-1, filed Feb. 1, 2017.

[2] Defendants' Motion to Dismiss, docket no. 28, filed Aug. 5, 2016.

[3] *Id.*

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................ 2
    Utah's Indigent Defense System ............................................................................. 3
    Procedural History .................................................................................................. 8
DISCUSSION ............................................................................................................... 10
    Standard of Review ............................................................................................... 10
    Plaintiffs Fail to Sufficiently Allege an Injury in Fact ....................................... 13
        There are insufficient allegations of an actual or complete denial of appointed
            counsel— Cronic's first situation in which prejudice is presumed .......... 18
        There are insufficient allegations that Plaintiffs' public defenders have entirely
            failed, or will entirely fail, to subject the prosecution's cases to meaningful
            adversarial testing— Cronic's second situation in which prejudice is
            presumed .............................................................................................. 24
        There are insufficient allegations that Plaintiffs' public defenders have been called
            upon to render assistance under circumstances where competent counsel
            very likely could not— Cronic's third situation in which prejudice is
            presumed .............................................................................................. 27
        Plaintiffs Fail to Sufficiently Demonstrate a Causal Connection Between Their Alleged
            Injury and Defendants' Conduct ........................................................................ 32
        The Declaratory Relief Plaintiffs Seek Does Not Meet the Standard for Redressability . 37
ORDER ........................................................................................................................ 44

# BACKGROUND

"The assistance of counsel is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty."[4] This right "stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not still be done."[5] "The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours."[6]

"Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime."[7] "Similarly, there are few defendants

---

[4] *Gideon v. Wainwright*, 372 U.S. 335, 343 (1963) (internal quotations and punctuation omitted).

[5] *Id.* (internal quotations omitted).

[6] *Id.* at 344.

[7] *Id.*

charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses."[8] "That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the wide-spread belief that lawyers in criminal courts are necessities, not luxuries."[9]

"From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law."[10] "This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him."[11] Therefore, "in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him."[12]

### Utah's Indigent Defense System

"To ensure compliance with the requirements that indigent defendants receive effective assistance of counsel and access to the basic tools of defense, the Utah Legislature enacted the Utah Indigent Defense Act"[13] (the "Act"). The Act establishes a system in which the State of Utah delegates the provision of indigent defense services to its counties and municipal legislative bodies.[14] The State's counties and municipalities must either "(a) contract with a defense services provider; or (b) authorize the court to provide the services . . . by assigning a qualified

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *State v. Parduhn*, 283 P.3d 488, 493 (Utah 2011) (internal quotations omitted), *superseded by statute as stated in State v. Steinly*, 345 P.3d 1182 (Utah 2015); Utah Code Ann. § 77-32-101 through -810.

[14] Utah Code Ann. § 77-32-306; Amended Complaint ¶¶ 8, 57.

attorney in each case."[15] A county may also create a county legal defender's office which may contract with other counties and municipalities or enter interlocal cooperation agreements to provide for indigent defense.[16] Additionally, counties and municipalities are authorized to enact ordinances to "provide for some other means which are constitutionally adequate for legal defense of indigents."[17]

Under the Act, public defenders shall "(a) counsel and defend the indigent at every stage of the proceeding following assignment; and (b) file any first appeal of right or other remedy before or after conviction that the assigned counsel considers to be in the interest of justice[.]"[18] The Act also provides minimum standards for indigent defense, including provision for avoiding conflicts of interest among public defenders.[19]

Regarding compensation, the Act provides that, except for counsel acting as defense services providers or otherwise under contract with a county or municipality, "[t]he county shall pay reasonable compensation to any attorney assigned by the court . . . ."[20] The Act directs the counties and municipalities to "establish and annually review guidelines for the rate of compensation" for public defenders which take into account:

(i) the nature and complexity of the case;

(ii) the competency and years of experience in criminal defense of the assigned attorney;

---

[15] Utah Code Ann. § 77-32-306(1).

[16] *Id.* §§ 77-32-306(2)-(4).

[17] *Id.* § 77-32-306(6).

[18] *Id.* § 77-32-304(1).

[19] *Id.* §§ 77-32-201(12), 301.

[20] *Id.* §§ 77-32-304.5(1), (2)(a).

(iii) the adjusted net hourly rate incurred by the county or municipality for a prosecutor or public defender of equivalent experience and competency; and

(iv) the prevailing rates within the judicial district for comparable services.[21]

If guidelines are not established, the Act provides that the public defender's rate of compensation will be determined by a judge using the same criteria.[22]

The Act also requires counties and municipalities to reimburse contracting public defenders for reasonably incurred expenses, exclusive of overheard and extraordinary expenses not approved by the court.[23] The state, counties, and municipalities are also responsible for defense expenses for printing briefs on any first appeal of right, including expenses of depositions and other transcripts.[24] The Act sets forth procedures for judicial review of challenges to the amount of a public defender's compensation and the approval of proposed expenditures for any extraordinary expense.[25] And the Act authorizes counties and municipalities to use public funds to carry out the Act's purposes, and to levy and collect taxes to meet the Act's requirements.[26]

Additionally, the Act creates two trust funds for specific types of indigent defense. The first is the Indigent Inmate Trust Fund,[27] which pays for the "representation, costs, and expenses of legal defense counsel for an indigent inmate in a state prison . . . who is charged with having

---

[21] *Id*. § 77-32-304.5(2)(b).

[22] *Id*. §§ 77-32-304.5(2)(c), (e).

[23] *Id*. § 77-32-305.5(2). An "extraordinary expense" is "the collective expense which exceeds $500 for defense resources or any particular service or item such as experts, investigators, surveys, or demonstrative evidence." *Id*. § 77-32-305.5(1).

[24] *Id*. § 77-32-305.

[25] *Id*. §§ 77-32-304.5(d), 305.5(3).

[26] *Id*. §§ 77-32-307(1), (3).

[27] *Id*. § 77-32-502(1).

committed a crime within the facility, and who will require defense counsel . . . ."[28] This fund consists of proceeds received from county tax levies, appropriations made by the State Legislature, and interest and earnings from the investment of fund money.[29]

The second fund created by the Act is the Indigent Aggravated Murder Defense Trust Fund.[30] It is "used to assist participating counties with financial resources . . . to fulfill their constitutional and statutory mandates for the provision of an adequate defense for indigents prosecuted for the violation of state laws in cases involving aggravated murder."[31] And it consists of money received from participating counties, appropriations made by the State Legislature, and interest and earnings from the investment of fund money.[32]

These funds are administered by the Indigent Defense Funds Board within the State's Division of Finance. This board is tasked with establishing rules and procedures for disbursements, and negotiating, entering into, and administering contracts with public defenders that are qualified and meet the standards of the Act.[33]

Finally, the Act was amended in May 2016 to create the Utah Indigent Defense Commission within the State's Commission on Criminal and Juvenile Justice.[34] "The purpose of the commission is to assist the state in meeting the state's obligations for the provision of

---

[28] *Id*. §§ 77-32-502(2).

[29] *Id*. § 77-32-502(3).

[30] *Id*. § 77-32-601(2).

[31] *Id*. § 77-32-601(5).

[32] *Id*. § 77-32-601(3).

[33] *Id*. §§ 77-32-401(1), 402(1), 501.

[34] *Id*. § 77-32-801(1).

indigent defense services, consistent with the United States Constitution, the Utah Constitution, and the Utah Code."[35] The commission has authority to:

- develop and adopt guiding principles for the assessment and oversight of indigent defense systems within the state;

- identify and collect data necessary to review compliance, establish procedures, and provide reports regarding the operation of the commission and indigent defense services;

- develop and oversee the establishment of advisory caseload principles and guidelines to aid indigent defense systems;

- review contracts and interlocal agreements for the provision of indigent defense services and provide assistance and recommendations regarding compliance with minimum principles for effective representation of indigent individuals in court;

- investigate, audit, and review indigent defense services for compliance with minimum principles;

- establish procedures for the receipt, acceptance, and resolution of complaints regarding indigent defense services;

- establish procedures that enable indigent defense systems to apply for state funding;

- establish procedures for annual reporting to the governor and the State Legislature and Judicial Council;

- award grants to indigent defense systems;

- encourage and aid in the regionalization of indigent defense services within the state for effective representation and for efficiency and costs savings to local systems;

- submit to legislative, executive, and judicial leadership proposed recommendations for improvement of indigent defense services; and

- identify and encourage best practices for effective representation.[36]

---

[35] *Id*. § 77-32-801(2). "'Indigent defense services' means the representation of indigent persons in criminal, juvenile delinquency, and child welfare cases." *Id*. § 77-32-801(3)(a).

[36] *Id*. § 77-32-804(1). "'Indigent defense system' means indigent defense services provided by: (i) local units of government, including a county, city, or town; or (ii) a regional legal defense organization." *Id*. § 77-32-801(3)(b).

The 2016 amendment to the Act also created an Indigent Defense Resources Restricted Account within the State's General Fund.[37] The account consists of appropriations made by the State Legislature, money received by the commission, and interest and earnings from the investment of account money.[38] And it is administered by the commission for "(a) establishment and maintenance of a statewide indigent defense data collection system; (b) grants to indigent defense systems for defense resources; and (c) grants to indigent defense systems for defense services providers."[39]

## Procedural History

Plaintiffs are indigent adults who have been charged with crimes in the State of Utah's district courts for which incarceration is a possible consequence of a conviction.[40] As indigent persons, Plaintiffs are dependent on legal counsel and other associated services necessary for their defense being provided to them.[41] Plaintiffs maintain that they have been, and are continuing to be, harmed by Defendants' failure to fund, administer, and supervise the State's indigent defense system.[42]

Plaintiffs initiated this proposed class action on June 26, 2016, in Utah's Third Judicial District Court for Salt Lake County.[43] Plaintiffs amended their complaint on July 1, 2016.[44] And

---

[37] *Id*. § 77-32-805(2).

[38] *Id*. § 77-32-805(3).

[39] *Id*. § 77-32-805(5).

[40] Amended Complaint ¶¶ 31-36, 43.

[41] *Id*. ¶ 44.

[42] *Id*. ¶¶ 1, 45.

[43] Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Opposition") at 4, docket no 46, filed Feb. 1, 2017; Class Action Complaint for Declaratory Relief, docket no. 2-1, filed July 13, 2016.

[44] Plaintiffs' Opposition at 4, n.14.

on July 13, 2016, Defendants removed the case to this court.[45] Plaintiffs subsequently moved for certification of their proposed classes[46] and Defendants moved to dismiss Plaintiffs' Amended Complaint.[47] Movant Roger Bryner has also filed a motion to intervene and participate in the case as a representative plaintiff.[48]

Plaintiffs' Amended Complaint alleges claims for violation of Plaintiffs' rights to counsel and due process under the Sixth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Article 1, §§ 7 and 12 of the Utah Constitution; and for violation of the minimum standards for indigent defense under § 301 of Utah's Indigent Defense Act.[49] The Amended Complaint requests relief in the form of declaratory judgment, injunctive relief, reasonable costs and attorneys' fees, and other appropriate supplemental and equitable relief.[50]

However, in response to Defendants' Motion to Dismiss, Plaintiffs limited their requested relief "to present a single issue for declaratory judgment: whether the Defendants are complying with the U.S. and Utah Constitutions in the way they ensure (or fail to ensure) the provision of indigent defense services statewide."[51] Plaintiffs affirmatively represent that they are not seeking injunctive relief.[52] They assert that "[b]ecause the ongoing crisis is a state problem, permanently solving it requires a state remedy."[53] Therefore, Plaintiffs maintain that if "Defendants are failing

---

[45] Notice of Removal to Federal Court, docket no. 2, filed July 13, 2016.

[46] Plaintiffs' Motion for Class Certification, docket no. 16, filed July 26, 2016.

[47] Defendants' Motion to Dismiss.

[48] Verified Motion to Intervene and Participate as Class Member and Additional Lead Plaintiff ("Motion to Intervene"), docket no. 59, filed Apr. 6, 2017.

[49] Amended Complaint ¶¶ 198-231.

[50] *Id*. ¶¶ 2, 204, 211, 216, 223, 231, Relief Requested at 51-52.

[51] Plaintiffs' Opposition at 2.

[52] *Id*. at 12-15.

[53] *Id*. at 13.

in their obligations under the Sixth and Fourteenth Amendments to the U.S. Constitution and Article 1, Sec. 12 of the Utah Constitution, then the methods by which that system is brought into constitutional compliance will be left to the *Defendants*—not the Court."[54]

## DISCUSSION

Defendants seek dismissal of Plaintiffs' Amended Complaint arguing that Plaintiffs lack standing, have not named the proper defendants, and fail to state a cognizable claim upon which relief may be granted.[55] Whether analyzed in terms of standing or failure to state a claim, dismissal of Plaintiffs' Amended Complaint is appropriate. The Amended Complaint is rife with generalized and conclusory allegations, and legal argument and opinions, which are insufficient to establish Plaintiffs' right to sue or state a claim. But because standing is a threshold jurisdictional issue,[56] the Amended Complaint will be analyzed and dismissed under principles of standing. However, for the same reasons, the Amended Complaint fails to state a claim upon which relief may be granted.[57]

## Standard of Review

"Federal courts are courts of limited jurisdiction."[58] "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]"[59]

---

[54] *Id.* at 2 (emphasis in original).

[55] Defendants' Motion to Dismiss.

[56] *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

[57] The Tenth Circuit has not addressed whether a claim exists for a state's systematic, preconviction denial of the right to counsel. Relying on precedent from other federal and state jurisdictions, Plaintiffs maintain that such a claim exists, and to succeed on the claim they must show "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." Plaintiffs' Opposition at 25-31 (quoting *Luckey v. Harris*, 860 F.2d 1012, 1017 (11th Cir. 1988)). As discussed below, the allegations of the Amended Complaint fail to demonstrate, or support a reasonable inference, that Plaintiffs have suffered, are suffering, or will suffer an actual or constructive denial of their right to counsel.

[58] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[59] *Id.* (internal citations omitted).

Therefore, "[i]t is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]"[60]

"Article III of the [United States] Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'"[61] "'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'"[62] "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'"[63] "This is the threshold question in every federal case[.]"[64]

"The law of Article III standing, which is built on separation-of-powers, serves to prevent the judicial process from being used to usurp the powers of the political branches."[65] "Without such limitations . . . the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights."[66]

Thus, "[i]t is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to

---

[60] *Id.* (internal citations omitted).

[61] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

[62] *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).

[63] *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

[64] *Seldin*, 422 U.S. at 500.

[65] *Amnesty Int'l USA*, 568 U.S. at 408.

[66] *Seldin*, 422 U.S. at 500.

comply with the laws and the Constitution."[67] "Of course, the two roles briefly and partially coincide when a court, in granting relief against actual harm that has been suffered, or that will imminently be suffered, by a particular individual or class of individuals, orders the alteration of an institutional organization or procedure that causes the harm."[68] "But the distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly."[69]

With these principles in mind, the United States Supreme Court has held:

the irreducible constitutional minimum of standing contains three elements[:] First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[70]

"For purposes of ruling on a motion to dismiss for want of standing . . . courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."[71] But "[a] federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing."[72] Conclusory allegations are not

---

[67] *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

[68] *Id*. at 350.

[69] *Id*.

[70] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations, citations, and punctuation omitted).

[71] *Seldin*, 422 U.S. at 501.

[72] *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990)).

considered,[73] and the complaint's legal conclusions and opinions are not accepted, even if they are couched as facts.[74]

### Plaintiffs Fail to Sufficiently Allege an Injury in Fact

The first element of standing requires a plaintiff to establish that it has suffered an injury in fact. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[75] Plaintiffs' alleged injury is the actual and constructive denial of their right to counsel.[76] Because Plaintiffs' underlying criminal cases are ongoing, they attempt to proceed using a denial of counsel theory where prejudice to their defense is presumed.[77]

In *United States v. Cronic*,[78] the United States Supreme Court identified "three situations implicating the right to counsel that involved circumstances 'so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified[,]'" and thus prejudice is presumed.[79] "First and '[m]ost obvious' [i]s the 'complete denial of counsel.'"[80] "A trial would be presumptively unfair . . . where the accused is denied the presence of counsel at 'a critical stage,' . . . a step of a criminal proceeding, such as arraignment, that held significant

---

[73] *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

[74] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); s*ee also Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995).

[75] *Lujan*, 504 U.S. at 560.

[76] Amended Complaint. ¶¶ 1, 45, 70. While Plaintiffs' Amended Complaint includes claims under the Sixth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, Article 1, §§ 7 and 12 of the Utah Constitution, and Utah Code Ann. § 77-32-301, each claim is premised on an alleged injury resulting from the actual and constructive denial of Plaintiffs' right to counsel. *Id*. ¶¶ 198-231.

[77] *Id*. ¶¶ 87-88; Plaintiffs' Opposition at 15-25.

[78] 466 U.S. 648, 658-59 (1984).

[79] *Bell v. Cone*, 535 U.S. 685, 695 (2002) (quoting *Cronic*, 466 U.S. at 658-59).

[80] *Id*. (quoting *Cronic*, 466 U.S. at 659).

consequences for the accused."[81] Second, "a similar presumption [i]s warranted if 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.'"[82] And third, "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not, the defendant need not show that the proceedings were affected."[83]

To show an injury in fact to Plaintiffs, the Amended Complaint sets out 231 numbered paragraph allegations. The vast majority of these allegations are generalized and conclusory. For example, the Amended Complaint alleges:

> All of them have had very little time to meet with their public defenders before critical events in their cases, some having spent weeks in jail without any contact, making it impossible for them to meaningfully participate in the defense. Some have been forced to meet with their defenders in the presence of others awaiting criminal hearings because their defenders lack the resources to arrange for private meetings. Several have not had their attorneys assist them in having the court review their bail in a meaningful way. Each of their attorneys are compromised in their ability to engage necessary resources like experts and investigators. Each are likely to feel pressure to accept a disadvantageous plea deal that they are unlikely to fully understand, and are unlikely to be fully advised by their attorneys of the long term consequences of a guilty plea. All face significant time incarcerated if convicted of their charges.[84]

It also generally alleges that Plaintiffs and the proposed class members are:

> spending more time in pre-trial detention; being subject to excessive bail; accepting plea agreements about which they are ill-informed and have no understanding of collateral effects (e.g., immigration); agreeing to plea agreements that are excessively punitive (increased fines and recoupment of attorney fees) and entail longer sentences; being unaware of sentencing alternatives; and generally being denied the constitutionally mandated procedures that ensure a fair and just defense to criminal charges.[85]

---

[81] *Id*. at 695-96 (internal citations omitted).

[82] *Id*. at 696 (quoting *Cronic*, 466 U.S. at 659).

[83] *Id*.

[84] Amended Complaint ¶ 25.

[85] *Id*. ¶ 191.

But the Amended Complaint fails to include necessary factual allegations demonstrating that these generalized grievances have occurred, are occurring, or will occur to Plaintiffs.

Plaintiffs argue that Defendants' alleged failure to collect empirical data on the State's indigent defense system and its public defenders prevents them from alleging specific facts demonstrating the violation of their right to counsel.[86] A lack of statewide empirical data may be a valid reason for Plaintiffs' generalized and conclusory allegations regarding the State's indigent defense system as a whole, but it is not a valid excuse for their failure to allege specific facts concerning their own public defenders and their own criminal cases.

Plaintiffs' right to counsel is certainly a cognizable interest for purposes of standing. "But the 'injury in fact' test requires more than an injury to a cognizable interest."[87] "It requires that the [plaintiffs] be [themselves] among the injured."[88] And the "threatened injury must be *certainly impending* to constitute injury in fact[; a]llegations of *possible* future injury are not sufficient."[89] Without factual allegations showing that Plaintiffs are among the injured and the injury is certainly impending, the Amended Complaint fails to allege an invasion of Plaintiffs' legally protected interests that is concrete and particularized, and actual or imminent.[90]

Only nine of the Amended Complaint's 231 numbered paragraphs include factual allegations relating to the six Plaintiffs.[91] The rest of the allegations are generalized and conclusory, and legal argument and opinions couched as facts. These types of allegations do not

[86] *Id*. ¶¶ 14-17, 60, 98, 107, 144-45, 155; Plaintiffs' Opposition at 16-17.

[87] *Defenders of Wildlife*, 504 U.S. at 563 (internal quotations omitted).

[88] *Id*. (internal quotations omitted).

[89] *Clapper*, 568 U.S. at 409 (internal quotations omitted).

[90] *Id*. at 560.

[91] Amended Complaint ¶¶ 31-36, 193, 195, 196.

suffice.[92] And even the nine paragraphs relating to Plaintiffs include generalized and conclusory commentary, and legal argument and opinions.[93]

The factual allegations relating to the six Plaintiffs are as follows:

- Plaintiff Colton Guy Remick was incarcerated in the Tooele County Detention Center in Tooele, Utah on May 4, 2016, and remained incarcerated as of July 1, 2016. He has pending charges of possession of a forgery device (Third Degree Felony); possession or use of a controlled substance (Third Degree Felony); and use or possession of drug paraphernalia (Class B Misdemeanor). Since his incarceration, Mr. Remick has spoken with his public defender once—at his initial appearance. When Mr. Remick spoke with his public defender, it was for a "short time" and in the presence of "many" other defendants waiting in a line to meet with the public defender.[94]

- Plaintiff Skylar W. Garner is a 32-year-old married man with two children under the age of five. As of July 1, 2016, he was incarcerated in the Carbon County Jail due to a violation of a No Contact Order. Prior to his arrest, Mr. Garner held two jobs as a technician and maintenance specialist. Since his arrest, he has had "very little" contact with his public defender and has spoken with his public defender for "less than 5 minutes." His public defender has given him no discovery or police reports, and has made no inquiry of him regarding the facts surrounding his charge.[95]

- Plaintiff Bryce Tucker Lloyd was incarcerated in the Tooele County Detention Center located in Tooele, Utah as of July 1, 2016. He has pending charges of burglary (Second Degree Felony); unlawful acquisition, possession, or transfer of a financial card (Third Degree Felony); possession or use of a controlled substance (Third Degree Felony); unlawful use of a financial transaction (Class B Misdemeanor); and use or possession of drug paraphernalia (Class B Misdemeanor). Mr. Lloyd has spoken to his public defender once—at his initial appearance. When Mr. Lloyd met with his public defender, it was for a "short time" and was in the presence of "several" other defendants. Mr. Lloyd has stopped attempting to speak with his public defender after "multiple" unsuccessful attempts.[96]

- Plaintiff Anthony Murdzak was incarcerated in the Cache County Jail located in Logan, Utah as of July 1, 2016. He has pending charges of theft (Third

---

[92] *Twombly*, 550 U.S. at 555; *Cory*, 583 F.3d at 1244; *Brown*, 63 F.3d at 972.

[93] Amended Complaint ¶¶ 31-36, 193, 195, 196.

[94] *Id*. ¶¶ 31, 193, 195.

[95] *Id*. ¶¶ 32, 193.

[96] *Id*. ¶¶ 33, 193, 195.

Degree Felony); and violation of firearm restrictions (Class A Misdemeanor). Mr. Murdzak was arrested on May 28, 2016, and arraigned on June 7, 2016, at which time he was appointed counsel. He did not meet with his public defender prior to the arraignment and his only meeting with the public defender was during his arraignment. Mr. Murdzak received no charging sheet; was not aware of the charges against him; and had no information as to why a firearm restriction charge had been made, as he had no firearm at the time of his arrest, nor was one found in the vehicle he was driving. Following his arraignment, Mr. Murdzak has not met with his public defender or received discovery, and he is unaware of when he will next meet with his public defender or have a preliminary hearing set for his case.[97]

- Plaintiff Colter Ricks was incarcerated in the Cache County Jail located in Logan, Utah as of July 1, 2016. He has pending charges of failure to stop (Class A Misdemeanor); possession of drug paraphernalia (Class A Misdemeanor); and possession of methamphetamine (Third Degree Felony). Mr. Ricks was arrested on May 28, 2016, and arraigned via video conference on May 31, 2016. He had no counsel at his arraignment, and during the arraignment, his bail for a prior charge was revoked and his bail for his current charges was denied. After his arraignment, Mr. Ricks was appointed a public defender, but he did not meet with his public defender prior to a pretrial hearing in his case on June 27, 2016.[98]

- Plaintiff Brandon Timms was incarcerated in the Cache County Jail located in Logan, Utah as of July 1, 2016. He has pending charges of theft (Class B Misdemeanor); and burglary (Second Degree Felony). Mr. Timms was originally arrested in Salt Lake County, but was transported and incarcerated in the Cache County Jail because his charges allegedly took place in Logan, Utah. Mr. Timms was arrested on June 2, 2016, and arraigned on June 13, 2016. He was not provided counsel and did not meet with his public defender prior to his arraignment.[99]

Plaintiffs argue that these facts show a denial of their right to counsel through:

- the absence of counsel at critical stages of judicial proceedings;

- the denial of access to counsel;

- the absence of a meaningful opportunity to understand the judicial process and to assist their public defenders in preparing a defense;

---

[97] *Id.* ¶¶ 34, 193.

[98] *Id.* ¶¶ 35, 193, 196.

[99] *Id.* ¶¶ 36, 193, 196.

- the denial of confidential attorney-client communications; and

- being pressured to enter plea agreements that are, in the long term, not to their advantage.[100]

Plaintiffs argument is without merit. The facts alleged do not expressly, or through reasonable inference, demonstrate an actual or constructive denial of Plaintiffs' right to counsel under *Cronic*'s three situations where prejudice to a defendant's criminal case is presumed.

**There are insufficient allegations of an actual or complete denial of appointed counsel—*Cronic*'s first situation in which prejudice is presumed**

### *Counsel were appointed and present at critical stages of the judicial proceedings*

"[I]t has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him."[101] "The rule is not mere formalism, but a recognition of the point at which the government has committed itself to prosecute, the adverse positions of government and defendant have solidified, and the accused finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law."[102]

Therefore, the right to counsel commences "by way of formal charge, preliminary hearing, indictment, information, or arraignment."[103] And at that point, if it is determined by the court that a defendant is unable to afford to hire an attorney of the defendant's own choosing, then the indigent defendant is entitled to have an attorney appointed by the court.[104]

---

[100] *Id.* ¶¶ 193-96; Plaintiffs' Opposition at 32-33.

[101] *Kirby v. Illinois*, 406 U.S. 682, 688 (1972).

[102] *Rothgery v. Gillespie County, Texas*, 554 U.S. 191, 198 (2008) (internal quotations omitted).

[103] *Id.* (internal quotations omitted).

[104] *Gideon*, 372 U.S. at 344-45. Rule 8 of the Utah Rules of Criminal Procedure and the Utah Indigent Defendant Act also imply that the right to appointed counsel materializes after a case has been filed and the defendant is found by the court to be indigent. Utah R. Crim. P. 8(a); Utah Code Ann. §§ 77-32-202, 302(1).

Plaintiffs misread the law in arguing that Plaintiffs were entitled to the appointment of counsel upon their arrest.[105] And the Amended Complaint contains no allegations of when adverse judicial proceedings were initiated against them. Nor does it contain allegations of when, or if, Plaintiffs were found to be indigent by a court. Plaintiffs' indigence may reasonably be inferred from the allegations suggesting that public defenders were ultimately appointed.[106] But in the absence of these crucial dates, the Amended Complaint fails to sufficiently allege that counsel were not timely appointed following Plaintiffs' arrests and the determination of their indigence. Rather, the allegations demonstrate that each Plaintiff was appointed a public defender who, after appointment, was present at each Plaintiff's respective court hearings.[107]

One possible exception to this comes from the allegation that Mr. Ricks had no counsel at his arraignment and bail hearing.[108] These are critical stages in a criminal proceeding,[109] and could demonstrate that Mr. Ricks suffered an actual or complete denial of counsel. But because there are no allegations suggesting that Mr. Ricks had been found indigent prior to, or at, his arraignment and bail hearing, his entitlement to a public defender at those hearings is left to speculation. Moreover, even if Mr. Ricks was entitled to a public defender at those hearings, there are insufficient factual allegations to support a reasonable inference that the failure to timely appoint him counsel resulted from a statewide, systemic failing of Utah's indigent defense system. Without further factual development, a single, cherry-picked instance does not

---

[105] Plaintiffs' Opposition at 19.

[106] Amended Complaint ¶¶ 31-36, 193, 195, 196.

[107] *Id*. ¶¶ 31-34, 36.

[108] *Id*. ¶¶ 35, 193.

[109] *Bell*, 535 U.S. at 695-96.

demonstrate a widespread and regular practice of untimely appointment of counsel to State's indigent defendants.[110]

Therefore, the Amended Complaint fails to sufficiently allege that Plaintiffs suffered an actual or complete denial of appointed counsel at critical stages of their judicial proceedings.

### *Plaintiffs were not denied access to counsel or a meaningful opportunity to understand the judicial process and assist counsel in preparing a defense*

Plaintiffs allege that they have had only limited contact with their public defenders, and that their public defenders have been unresponsive to inquiries and not provided them with discovery and other court documents.[111] But the Amended Complaint contains no allegations that Plaintiffs were ever prevented from speaking with their counsel or denied access to their counsel.

The alleged lack of contact and communication between Plaintiffs and their public defenders is disheartening. But further factual context to these allegations is necessary. The Amended Complaint does not indicate the dates, number of times, or by what means Plaintiffs unsuccessfully attempted to contact their public defenders. It does not identify the topics of discussion in the instances when they did communicate with their public defenders. Nor does it offer facts regarding the procedural posture of Plaintiffs' underlying criminal cases. Long discussions are not necessarily required at early stages of criminal proceedings.

The stage of the proceedings for each Plaintiff's criminal case is largely unknown. Whether their public defenders have received discovery from the government or whether discovery is ongoing is unknown. And whether trials are scheduled is unknown. In the absence

---

[110] *Compare Hurrell-Harring v. State*, 930 N.E.2d 217, 224 (N.Y. Ct. App. 2010) (holding that the complaint was sufficient to state a claim for systemic violation of the right to counsel where the "complaint contain[ed] numerous plain allegations that in specific cases counsel simply was not provided at critical states of the proceedings.").

[111] Amended Complaint ¶¶ 31-36, 193.

of these facts, to assume prejudice or that Plaintiffs' public defenders will not communicate with them about their cases as the proceedings progress toward trial is unreasonable conjecture.

Therefore, the Amended Complaint fails to sufficiently allege that Plaintiffs were denied access to counsel, or that they have not had, or will not have, a meaningful opportunity to understand the judicial process and charges against them or to assist their public defenders in preparing a defense.

### No denial of confidential attorney-client communications

The Amended Complaint alleges that Mr. Remick and Mr. Lloyd met with their public defenders in the presence of other defendants at their initial appearances.[112] While "[t]he essence of the Sixth Amendment right to effective assistance of counsel is, indeed, privacy of communication with counsel[,]"[113] Plaintiffs cite no authority supporting a *per se* rule that whenever conversations with counsel are overheard by others the Sixth Amendment is violated. "Indeed, the Supreme Court of the United States has rejected any such suggestion."[114] The authorities on which Plaintiffs rely hold that "[t]he constitutional barrier is raised when it is *the Government* that unlawfully intrudes on legal strategy conferences, as when it eavesdrops by electronic means, or when it 'plants' a spy in the legal conference."[115] The Amended Complaint contains no such allegations regarding Plaintiffs' communications with their public defenders.

Moreover, not all communications between counsel and client are confidential or intended to be confidential. Plaintiffs do not allege that the communications Mr. Remick and Mr.

---

[112] *Id.* ¶¶ 31, 33, 195.

[113] *United States v. Brugman*, 655 F.2d 540, 546 (4th Cir. 1981) (citing *Glasser v. United States*, 315 U.S. 60, 62 (1942)).

[114] *Id.* (citing *Weatherford v. Bursey*, 429 U.S. 545 (1977)).

[115] *United States v. Rosner*, 485 F.2d 1213, 1227 (2d Cir. 1973); *see also Brugman*, 655 F.2d at 546; *United States v. Dyer*, 821 F.2d 35, 38 (1st Cir. 1987).

Lloyd had with their public defenders at their initial appearances pertained to confidential matters or were intended to be confidential. And while Plaintiffs generally allege that the State's courthouses lack private spaces for indigent defendants to meet and communicate with their public defenders,[116] the Amended Complaint contains no allegation that private spaces are not made available at other facilities, such as the jails and detention centers at which Plaintiffs are held in custody. It is not reasonable to infer that private spaces at other facilities are not made available for Plaintiffs and their public defenders to meet and communicate.

Therefore, the Amended Complaint fails to sufficiently allege a concrete and particularized denial of Plaintiffs' ability to engage in confidential attorney-client communications.

### *No factual allegations of being pressured to enter plea agreements*

Couched in the allegation regarding Mr. Remick's meeting with his public defender at his initial appearance, is the statement that:

> Other defendants assigned to the same public defender were in a line waiting to meet with the public defender; because of the wait, some defendants were incented to accept a plea deal because, if a plea deal was rejected, defendant would have to go to the back of the line, and wait at least one more hour to again speak with the public defender.[117]

The Amended Complaint also alleges that "[s]ome Plaintiffs, like [Mr.] Ricks and [Mr.] Timms have been detained in jail for over a month, increasing the pressure to take a deal that is in the long term not to their advantage but has the potential immediate advantage of getting out of jail and being able to go back to work."[118]

---

[116] Amended Complaint ¶¶ 158-60.

[117] *Id.* ¶ 31.

[118] *Id.* ¶ 196.

These are not allegations that Mr. Remick, Mr. Ricks, or Mr. Timms were pressured by someone to enter plea agreements. Indeed, there are no allegations that any Plaintiff was ever pressured by a public defender or anyone else to enter a plea agreement. The first allegation is presumably an opinion of Mr. Remick that on the day of his initial appearance, "[o]ther defendants" felt incentivized to enter plea agreements to avoid waiting to speak with their public defender.[119] That other defendants felt incentivized is conclusory and conjecture. It is also insufficient to show that Mr. Remick was pressured to enter a plea agreement. And even if the allegation pertained to Mr. Remick, having to wait is inconvenient, but does not compel. The allegations show that an opportunity for full discussion—at the back of the line—was available.

Additionally, the allegation regarding Mr. Ricks and Mr. Timms is merely that they felt internal pressure to enter plea agreements.[120] This was due to the length of time they had spent in custody, not because their public defenders or anyone else had placed pressure on them.[121] Feeling pressure to enter a plea from the circumstances of being charged with a crime and held in custody is not the same as being pressured to coerce a plea agreement. Moreover, there are insufficient factual allegations to support reasonable inference that the length of time Mr. Rick and Mr. Timms have spent in custody has anything to do with their indigence, or some failing on the part of their public defenders or the State's indigent defense system.

Therefore, allegations are insufficient show that Plaintiffs are being pressured to enter plea agreements.

---

[119] *Id.* ¶ 31.

[120] *Id.* ¶ 196

[121] *Id.*

Accordingly, the Amended Complaint fails to allege sufficient facts that Plaintiffs have suffered, are suffering, or will suffer an injury in fact through an actual or complete denial of counsel.

**There are insufficient allegations that Plaintiffs' public defenders have entirely failed, or will entirely fail, to subject the prosecution's cases to meaningful adversarial testing—*Cronic*'s second situation in which prejudice is presumed**

The Amended Complaint alleges that Plaintiffs have had limited contact and communication with their public defenders.[122] Plaintiffs argue that these allegations, coupled with the general allegations regarding the State's public defenders are sufficient to raise reasonable inference that Plaintiffs' public defenders have entirely failed, or will entirely fail, to subject the prosecution's cases to meaningful adversarial testing.[123]

Plaintiffs' argument relies on the Amended Complaint's general allegations that many of the State's public defenders provide services to indigent defendants based on fixed flat fee contracts with the State's counties.[124] Plaintiffs submit that these contracts financially incentivize public defenders to spend as little time as possible working on an indigent defendant's case.[125] Plaintiffs also rely on their generalized and conclusory allegations that many of the State's public defenders are overworked and rarely make discovery or other pretrial motions;[126] that the State and its counties do not adequately compensate, train, or supervise public defenders;[127] and that there are no measures in place to assure that the State's public defenders are qualified to subject

---

[122] *Id*. ¶¶ 31-36, 193.

[123] Plaintiffs' Opposition at 20-21.

[124] Amended Complaint ¶¶ 10-12, 104, 110, 117-20, 126-27, 129, 134, 154, 169, 172, 190

[125] *Id*.

[126] *Id*. ¶¶ 12, 103, 109, 118, 142, 144-49, 157, 173-75, 177, 179-80, 182, 186, 190.

[127] *Id*. ¶¶ 10, 12, 100, 103, 108-09, 118-20, 130, 132, 134, 139-40, 142, 153-54, 170-72, 187, 190.

criminal cases to meaningful adversarial testing.[128] Additionally, Plaintiffs refer to national standards for public defenders and findings from various studies of the State's indigent defense system that have identified issues with the use of flat fee contracts and the high caseloads, low compensation, and lack of supervision and training of public defenders.[129]

The issues with the State's indigent defense system and its public defenders raised by Plaintiffs and the findings of the cited studies are certainly cause for concern. But these types of generalized and conclusory allegations are not sufficient to demonstrate that Plaintiffs' public defenders have entirely failed, or will entirely fail, to subject the prosecution's cases to meaningful adversarial testing.[130]

The United States Supreme Court has made clear that for an attorney to entirely fail to subject the prosecution's case to meaningful adversarial testing "the attorney's failure must be complete."[131] It is not enough to allege that "counsel failed to [oppose the prosecution] at specific points."[132] Such allegations may support a claim of ineffective assistance of counsel under the test of *Strickland v. Washington*,[133] where counsel's performance and prejudice to the defendant are analyzed after the defendant's conviction.[134] But they are not sufficient for a denial of counsel claim under *Cronic*, where prejudice to the defendant is presumed.[135] Under *Cronic*,

---

[128] *Id*. ¶¶ 14, 98-99, 101, 104, 107, 109, 130, 132-34, 137, 140, 142, 144-45, 190.

[129] *Id*. ¶¶ 21-23, 77-84, 89-92, 102, 107, 143.

[130] Plaintiffs also ignore, gloss over, or attempt to diminish the role of the 2016 amendment to Utah's Indigent Defense Act. Amended Complaint ¶¶ 26, 62-70, 105; Plaintiffs' Opposition at 4, n.12. This amendment created the Utah Indigent Defense Commission and an Indigent Defense Resources Restricted Account to address the precise issues with Utah's indigent defense system and its public defenders that Plaintiffs and the cited studies identify. Utah Code Ann. §§ 77-32-801(1)-(2), 804(1), 805(2)-(5).

[131] *Bell*, 535 U.S. at 697.

[132] *Id*.

[133] 466 U.S. 668, 688, 694 (1984).

[134] *Bell*, 535 U.S. at 697-98.

[135] *Id*. at 696-97.

the allegations must demonstrate that "counsel failed [or will fail] to oppose the prosecution throughout the . . . proceeding as a whole . . . ."[136]

Again, the alleged lack of contact and communication between Plaintiffs and their public defenders is disheartening, and the generalized allegations regarding public defenders in the State are troubling. But the Amended Complaint contains no allegations specific to Plaintiffs' public defenders. Their experience in criminal defense and qualifications are unknown. Whether they have flat fee contracts with counties is unknown. And even if it were reasonable to infer that they do have flat fee contracts, their caseloads and the amount of their compensation and expenses are unknown. To assume that Plaintiffs' public defenders are underqualified, overworked, underpaid, and have not been provided the resources necessary for a complete defense is conjecture.

Moreover, the Amended Complaint offers only limited facts regarding Plaintiffs' underlying charges and criminal cases.[137] Whether Plaintiffs' public defenders have received discovery from the government and whether discovery is ongoing is unknown. The extent to which investigative resources or expert witnesses are needed is unknown. Whether trials are scheduled is unknown. And whether there will be a need for the filing of pretrial motions is unknown. On this record, it is unreasonable to infer that Plaintiffs' public defenders are spending, or will spend, so little time working on Plaintiffs' cases as to render their representation constitutionally inadequate.

---

[136] *Id.* at 697.

[137] Amended Complaint ¶¶ 31-36.

Therefore, the Amended Complaint fails to allege sufficient facts that Plaintiffs have suffered, are suffering, or will suffer an injury in fact through their public defenders entirely failing to subject the prosecution's cases to meaningful adversarial testing.

**There are insufficient allegations that Plaintiffs' public defenders have been called upon to render assistance under circumstances where competent counsel very likely could not—*Cronic*'s third situation in which prejudice is presumed**

Plaintiffs maintain that they do not have a meaningful relationship with their public defenders because of an alleged lack of contact and communication.[138] Plaintiffs argue that in the absence of a meaningful relationship with their public defenders, no competent representation can take place.[139] Plaintiffs further argue that their public defenders cannot render adequate assistance due to their excessive caseloads, the lack of physical space for indigent defendants to meet with public defenders in the State's courthouses, and the conflicts inherent with flat fee contracts between public defenders and the State's counties.[140]

Under *Cronic*, "only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial."[141] The factual circumstances must show "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial."[142]

---

[138] *Id*. ¶¶ 31-36, 193; Plaintiff's Opposition at 21-23.

[139] Plaintiff's Opposition at 21-23.

[140] *Id*. at 23.

[141] *Cronic*, 466 U.S. at 662.

[142] *Id*. at 659-60.

By way of example, the United States Supreme Court identified circumstances that justify such a presumption, and those that do not.[143] *Powell v. Alabama*[144] is a case with circumstances justifying a presumption of prejudice:

> The defendants had been indicted for a highly publicized capital offense. Six days before trial, the trial judge appointed 'all the members of the bar' for purposes of arraignment. 'Whether they would represent the defendants thereafter if no counsel appeared in their behalf, was a matter of speculation only, or, as the judge indicated, of mere anticipation on the part of the court.' On the day of trial, a lawyer from Tennessee appeared on behalf of persons 'interested' in the defendants, but stated that he had not had an opportunity to prepare the case or to familiarize himself with local procedure, and therefore was unwilling to represent the defendants on such short notice. The problem was resolved when the court decided that the Tennessee lawyer would represent the defendants, with whatever help the local bar could provide. 'The defendants, young, ignorant, illiterate, surrounded by hostile sentiment, haled back and forth under guard of soldiers, charged with an atrocious crime regarded with especial horror in the community where they were to be tried, were thus put in peril of their lives within a few moments after counsel for the first time charged with any degree of responsibility began to represent them.' . . . [U]nder these circumstances the likelihood that counsel could have performed as an effective adversary was so remote as to have made the trial inherently unfair.[145]

On the other hand, *Avery v. Alabama*[146] is a case with circumstances that did not justify a presumption of prejudice:

> [C]ounsel was appointed in a capital case only three days before trial, and the trial court denied counsel's request for additional time to prepare. Nevertheless, . . . since evidence and witnesses were easily accessible to defense counsel, the circumstances did not make it unreasonable to expect that counsel could adequately prepare for trial during that period of time[.][147]

---

[143] *Id.* at 660-62.

[144] 287 U.S. 45 (1932).

[145] *Cronic*, 466 U.S. at 660 (quoting *Powell*, 287 U.S. at 56, 57-58).

[146] 308 U.S. 444 (1940).

[147] *Cronic*, 466 U.S. at 661 (citing *Avery*, 308 U.S. at 450-53).

These examples demonstrate that a presumption of prejudice will arise only in extremely rare and fact specific circumstances.[148] The possibility of defense counsel adequately preparing for a capital trial in three days under any circumstances seems unlikely, but it was not so remote and inherently unfair as to justify a presumption of prejudice in *Avery*. This is not to say that a defendant facing similar circumstances to those in *Avery* has no potential claim for a violation of the right to counsel. Such a defendant may still assert a post-trial claim for ineffective assistance of counsel under *Strickland*, where counsel's actual performance and prejudice to the defendant are analyzed.[149] But a defendant may not use *Cronic*'s presumption of prejudice to supplant the postconviction procedure of analyzing the right to counsel under *Strickland*.[150]

The allegations of Plaintiffs' Amended Complaint are insufficient to show, and fail to create reasonable inference, that Plaintiffs' public defenders have been called upon to render assistance under circumstances in which competent counsel very likely could not. There are no allegations specific to Plaintiffs' public defenders and only minimal allegations regarding Plaintiffs' underlying criminal cases. Their public defenders' experience, qualifications, caseloads, and compensation and expenses are unknown. Whether their public defenders have received discovery, whether discovery is ongoing, and whether trials are scheduled is unknown. And the extent to which investigative resources, expert witnesses, and the filing of pretrial motions are needed is unknown.

Plaintiffs' Amended Complaint does allege a lack of contact and communication between Plaintiffs and their public defenders.[151] But without further context, it fails to allege sufficient

---

[148] *Hooks v. Workman*, 689 F.3d 1148, 1186 (10th Cir. 2012) ("Plainly, this kind of case will be an 'unusual' one.").

[149] *Bell*, 535 U.S. at 697-98.

[150] *Id.*

[151] Amended Complaint ¶¶ 31-36, 193.

facts to permit reasonable inference that, as Plaintiffs' criminal cases progress towards trial, Plaintiffs and their public defenders will not develop a meaningful relationship so as to permit competent representation.

Even considering the generalized and conclusory allegations regarding the State's indigent defense system and its public defenders, Plaintiffs' Amended Complaint fails to show circumstances akin to *Powell* in which the likelihood that counsel may perform as an effective adversary is so remote as to make Plaintiffs' cases inherently unfair. Plaintiffs allege that the State's public defenders are not paid or given resources commensurate to the State's prosecutors.[152] But parity of compensation is only one factor in determining the appropriate compensation for a public defender in a particular case.[153] And a lack of parity does not automatically equate to circumstances in which competent counsel cannot render assistance. Such is not a reasonable inference.

Plaintiffs allege a lack of physical space in the State's courthouses at which indigent defendants can meet with their public defenders.[154] But Plaintiffs fail to allege that such spaces are not made available elsewhere, such as at the jails and detention centers where the indigent defendants are held in custody. And it is not reasonable to infer that the alleged issues arising from the public defenders' flat fee contracts with the State's counties are so great and inherently unfair as to justify a presumption that the public defenders cannot render constitutionally adequate representation to their indigent clients.

Indeed, "[t]he Tenth Circuit has applied *Cronic* only where the evidence 'overwhelmingly established that [the] attorney abandoned the required duty of loyalty to his

---

[152] *Id.* ¶¶ 10, 106, 140, 152, 170-72.

[153] Utah Code Ann. § 77-32-304.5(2)(b).

[154] Amended Complaint ¶¶ 31, 33, 158-60, 195.

client . . . apparently with the intention to weaken his client's case.'"[155] The circumstances Plaintiffs allege, while troublesome, do not rise to the level of *Avery*, let alone *Powell*.

Therefore, the Amended Complaint fails to allege sufficient facts that Plaintiffs have suffered, are suffering, or will suffer an injury in fact through their public defenders being called upon to render assistance under circumstances in which competent counsel very likely could not.

The Amended Complaints fails to allege sufficient circumstances to constitute an actual or constructive denial of Plaintiffs' right to counsel under *Cronic*, where prejudice to Plaintiffs is presumed. Thus, it fails to demonstrate an actual or imminent invasion of Plaintiffs' right to counsel which is concrete and particularized. The alleged harms to Plaintiffs are conjectural and hypothetical. The judiciary may not intervene when no actual harm is present or imminent.[156] Plaintiffs have simply alleged their status as indigent defendants that are subject to a governmental institution that may not be organized or managed properly.[157] "It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution."[158] Therefore, Plaintiffs fail to sufficiently allege an injury in fact for purposes of standing.

[155] *Lockett v. Trammel*, 711 F.3d 1218, 1247 (10th Cir. 2013) (quoting *Turrentine v. Mullin*, 390 F.3d 1181, 1208 (10th Cir. 2004)).

[156] *Casey*, 518 U.S. at 350.

[157] *Id*.

[158] *Id*. at 349.

## Plaintiffs Fail to Sufficiently Demonstrate a Causal Connection
## Between Their Alleged Injury and Defendants' Conduct

The second element of standing "[t]o invoke federal jurisdiction [requires] a plaintiff [to] show that his or her injury is 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'"[159] "Article III's causation requirement demands 'something less than the concept of 'proximate cause.''"[160] But "Article III does at least require proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact."[161] And "[t]he plaintiff's burden of demonstrating causation is not satisfied when '[s]peculative inferences are necessary to connect [the plaintiff's] injury to the challenged actions [or inaction].'"[162]

Additionally, "[w]hen the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be [alleged] in order to establish standing depends considerably upon whether the plaintiff is . . . an object of the action (or forgone action) at issue."[163] Expounding on this principle, the United States Supreme Court stated:

> If [the plaintiff] is [the object], there is ordinarily little question that the action or inaction [of the government] has caused [the plaintiff's] injury . . . . When, however, . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed. In that circumstance, causation . . . ordinarily hinge[s] on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well. The existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation . . . . Thus,

[159] *Gandy*, 416 F.3d at 1156 (quoting *Lujan*, 504 U.S. at 560).

[160] *Id*. (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003)).

[161] *Id*.

[162] *Id*. at 1157 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45-46 (1976)).

[163] *Lujan*, 504 U.S. at 561.

when the plaintiff is not . . . the object of the government action or inaction [the plaintiff] challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish.[164]

Plaintiffs' Amended Complaint includes numerous allegations regarding Defendants' failure to fund, administer, and oversee the State's indigent defense system.[165] Each of Plaintiffs' claims assert that these alleged failings are the cause of the denial of Plaintiffs' right to counsel.[166]

In *Gideon v. Wainwright*, the United States Supreme Court held that the United States Constitution requires states to furnish counsel to persons charged with crimes, who are unable to afford or obtain counsel.[167] But *Gideon* left open how states were to fund and administer their respective indigent defense systems. Through its Indigent Defense Act, Utah has delegated the provision of indigent defense services to its counties and municipal legislative bodies.[168] Plaintiffs cite to no authority, and do not argue, that such a delegation is constitutionally impermissible on its face. Indeed, Plaintiffs acknowledge that "a state may delegate obligations imposed by either the state or U.S. Constitutions,"[169] including delegation of "the practical implementation of indigent defense to the [state's] counties and municipalities . . . ."[170]

Rather, Plaintiffs maintain that the manner in which the State has delegated indigent defense services to the counties and municipalities—allegedly without funding, administration, or oversight—has caused a systemic denial of Plaintiffs and the proposed class members' right to

---

[164] *Id*. at 561-62 (internal quotations and citations omitted; emphasis in original).

[165] Amended Complaint ¶¶ 7-8, 10, 14, 19, 58-61, 71-72, 97-101, 103, 107-09, 130-32, 138, 142, 144, 146, 150-51, 158, 190.

[166] *Id*. ¶¶ 198-231.

[167] 372 U.S. 335.

[168] Amended Complaint ¶¶ 8, 57; Utah Code Ann. § 77-32-306.

[169] Plaintiffs' Opposition at 10.

[170] *Id*. at 8.

counsel.[171] Thus, while Plaintiffs are the ultimate beneficiaries of the indigent defense services provided, they themselves are not the object of the challenged action or inaction of Defendants in this case. Instead, the asserted denial of the right to counsel arises from Defendants' allegedly unlawful lack of regulation of the State's counties and municipalities. And because the counties and municipalities are independent actors not before the court, Plaintiffs must meet the higher burden of adducing facts showing that the counties and municipalities' provision of indigent defense services has been or will be made in such manner as to produce causation.[172]

Plaintiffs' Amended Complaint fails to meet this burden. Plaintiffs' assert:

> [T]he State has an obligation to ensure that its counties are capable of meeting the delegated functions and have the means to do so. [It] also must assure that the counties have in fact discharged any delegated functions by providing state oversight to assure that the defense being provided by the counties passes constitutional muster. If the counties cannot meet the delegated obligations, the State—as the original obligor—must step in.[173]

This may very well be true. But the Amended Complaint does not allege that the State's counties and municipalities are not capable of meeting the delegated functions of providing indigent defense services in the absence of funding, administration, and oversight from Defendants. Rather, the Amended Complaint alleges that "Defendants have allowed a system to develop in which counties and municipalities are not providing timely and competent legal counsel, are denying public defenders investigatory resources necessary for a complete defense, and creating conditions making it practically impossible for public counsel to provide undivided loyalty to their clients."[174] This allegation is conclusory and is not supported by factual allegations.

---

[171] *Id*. at 9-12.

[172] *Lujan*, 504 U.S. at 562.

[173] *Id*. at 9.

[174] Amended Complaint ¶ 95; *see also id*. ¶ 59.

The Amended Complaint reads as though it were a brief, written in response to a motion to dismiss, rather than a complaint which alleges facts to support its causes of action. And at times it reads as though the *public defenders* are the plaintiffs, claiming unfairness in the contracts they negotiate with the State's counties and municipalities.[175] The Amended Complaint is rife with anecdote, allegations of generalized grievances, and argument regarding the effect of how the State's counties and municipalities select, compensate, train, and supervise public defenders.[176] But it is missing factual allegations specific to these Plaintiffs to support and demonstrate these generalized grievances.

Plaintiffs offer no facts of specific cases in which these grievances have occurred or are occurring. They do not identify or provide facts regarding any public defender that is unqualified, overworked, or unable to competently represent his or her indigent clients because of the counties and municipalities' actions. And in the absence of these types of factual allegations, it is speculative to infer that the alleged denial of Plaintiffs' right to counsel is caused by the counties and municipalities' actions. Likewise, it is speculative to infer that the alleged denial of counsel has occurred or is occurring on a systemic level because of Defendants' alleged failure to fund, administer, and oversee the counties and municipalities' provision of indigent defense services. The alleged denial of counsel may simply be caused by the action or inaction of certain public defenders in certain cases, which is appropriately the subject matter of an individual defendant's postconviction claim for ineffective assistance of counsel under *Strickland*.[177]

---

[175] *Id*. ¶¶ 9-14, 112-129, 139-41, 143, 148-57, 170-80.

[176] *Id*. ¶¶ 9-14, 21-25, 61, 70-73, 75-85, 92, 94-96, 104, 108-120, 126-138, 142-43, 145-49, 150-61, 166-80, 182-91.

[177] *Bell*, 535 U.S. at 697-98.

Certainly, Plaintiffs have identified issues that may arise with the use of flat fee contracts to retain public defenders.[178] But Plaintiffs cite no authority holding that the counties and municipalities' use of these types of contracts results in a *per se* denial of the right to counsel. Facts are needed to allow reasonable inference that Plaintiffs have suffered or are suffering harm because of these contracts. Likewise, Plaintiffs have identified issues that may arise from a lack of supervision and training of public defenders.[179] But facts are needed to allow reasonable inference that a lack of supervision and training has caused or is causing harm to Plaintiffs. And facts are needed to allow reasonable inference that a lack of State funding is the cause of Plaintiffs' alleged harm.

Utah's Indigent Defense Act sets forth how the State's counties and municipalities are to obtain counsel for indigent defendants;[180] when an indigent defendant is entitled to counsel;[181] the minimum standards for indigent defense;[182] and how to determine appropriate compensation and reimbursement of expenses for counsel.[183] The Act creates trust funds and a restricted account which are dedicated to the provision of indigent defense services.[184] The Act enables the State's counties and municipalities to use public funds and levy taxes to pay for indigent defense services.[185] And the Act establishes a commission to assist the state in meeting the state's obligations for the provision of indigent defense services.[186] Given this statutory framework, and

---

[178] Amended Complaint ¶¶ 9-12, 81, 110, 113-29, 173-88.

[179] *Id*. ¶¶ 10, 13-14, 19-24, 77-84, 89-92, 98-104, 107-09, 130, 132-37, 142-49, 151, 154-61, 173-91.

[180] Utah Code Ann. § 77-32-306.

[181] *Id*. § 77-32-304(1).

[182] *Id*. §§ 77-32-201(12), 301.

[183] *Id*. §§ 77-32-304(3), 304.5, 305, 305.5.

[184] *Id*. §§ 77-32-502, 601, 805.

[185] *Id*. §§ 77-32-307(1), (3).

[186] *Id*. §§ 77-32-801, 804.

the absence of factual allegations in Plaintiffs' Amended Complaint, it is speculative to infer that Plaintiffs' alleged denial of counsel is fairly traceable to the challenged conduct of Defendants, and not the result of the independent action of some third party—the counties and municipalities or individual public defenders—not before the court.

Therefore, the Amended Complaint fails to sufficiently demonstrate causation for purpose of establishing Plaintiffs' standing to sue.

### The Declaratory Relief Plaintiffs Seek Does Not Meet the Standard for Redressability

The third element of standing requires a plaintiff to establish that it is "likely, as opposed to merely speculative, that [the plaintiff's alleged] injury will be redressed by a favorable [court] decision."[187] Plaintiffs have limited the requested relief in their Amended Complaint "to present a single issue for declaratory judgment: whether the Defendants are complying with the U.S. and Utah Constitutions in the way they ensure (or fail to ensure) the provision of indigent defense services statewide."[188]

"It is well established that what makes a declaratory judgment action 'a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is [ ] the settling of some dispute which affects the behavior of the defendant toward the plaintiff.'"[189] "A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot."[190] "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests."[191] "It must be a

---

[187] *Lujan*, 504 U.S. at 561 (internal quotations omitted).

[188] Plaintiffs' Opposition at 2.

[189] *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)) (alteration in original), *superseded on other grounds as recognized in Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001).

[190] *Aetna Life Ins. Co. of Hartford, Connecticut v. Haworth*, 300 U.S. 227, 240 (1937).

[191] *Id*. at 240-41.

real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[192]

Declaratory relief cannot be "used as preparation for further litigation . . . ."[193] A declaratory judgment must terminate the parties' controversy.[194] "[I]t must be the effect of the court's judgment on the defendant that redresses the plaintiff's injury, whether directly or indirectly."[195] "If courts may simply assume that everyone (including those who are not proper parties to an action) will honor the legal rationales that underlie their decrees, then redressability will always exist. Redressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power."[196]

Plaintiffs assert that "[b]ecause the ongoing crisis [with Utah's indigent defense system] is a state problem, permanently solving it requires a state remedy."[197] And Plaintiffs maintain that if "Defendants are failing in their obligations . . . then the methods by which that system is brought into constitutional compliance will be left to the *Defendants*—not the Court."[198] Plaintiffs argue a declaratory judgment determining that Defendants are not complying with the United States and Utah Constitutions in the provision of indigent defense services will remedy

---

[192] *Id*. at 241; *see also Miller v. Weaver*, 66 P.3d 592, 597 (Utah 2003) (Under Utah law, "[a] justiciable controversy authorizing entry of a declaratory judgment is one wherein the plaintiff is possessed of a protectible interest at law or in equity and the right to a judgment, and the judgment, when pronounced, must be such as would give specific relief.").

[193] *Shannon v. Sequeechi*, 365 F.2d 827, 829 (10th Cir. 1966).

[194] *Id*.

[195] *Gandy*, 416 F.3d at 1159.

[196] *Id*. (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (Scalia, J., concurring)).

[197] Plaintiffs' Opposition at 13.

[198] *Id*. at 2 (emphasis in original).

the alleged denial of Plaintiffs' right to counsel. Plaintiffs argument relies on the United State Supreme Court's analysis in *Steffel v. Thompson*.[199]

In *Steffel*, the issue was "whether declaratory relief is precluded when a state prosecution has been threatened, but is not pending, and a showing of bad-faith enforcement or other special circumstances has not been made."[200] The petitioner was threatened with arrest for criminal trespass for distributing anti-war handbills on the exterior sidewalk of a shopping center.[201] He filed a complaint in federal court seeking, among other things, a declaratory judgment that the state's criminal trespass statute was being applied in violation of his First and Fourteenth Amendment rights.[202]

The Supreme Court determined that the petitioner had demonstrated an injury in fact: "In these circumstances, it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."[203] The Court also determined that declaratory relief would not interfere with state criminal proceedings:

> When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles.[204]

And the Court addressed the likely effect a declaratory judgment would have:

> Of course, a favorable declaratory judgment may . . . be valuable to the plaintiff though it cannot make even an unconstitutional statute disappear . . . . [T]he

---

[199] 415 U.S. 452 (1974).

[200] *Id*. at 454.

[201] *Id*. at 455-56.

[202] *Id*. at 454, 456.

[203] *Id.* at 459.

[204] *Id*. at 462.

> declaration may still be able to cut down the deterrent effect of an unconstitutional statute. The persuasive force of the . . . opinion and judgment may lead state prosecutors, courts, and legislators to reconsider their respective responsibilities toward the statute. Enforcement policies or judicial construction may be changed, or the legislature may repeal the statute and start anew.[205]

The Court ultimately held that "federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied."[206]

The inapplicability of *Steffel* to Plaintiffs' claim for declaratory relief is obvious. *Steffel* is factually distinguishable. Its petitioner challenged the constitutionality of a single state criminal statute as applied to his conduct when no criminal prosecution was pending.[207] A declaration of unconstitutionality would render later convictions under that statute for similar conduct reversible.[208] It would also have the likely effect of changing the future conduct of state prosecutors and courts in applying the statue, and state legislators in repealing the statute.[209] And because no prosecution was pending, the declaratory judgment was not interfering with state criminal proceedings.[210]

Also, Plaintiffs do not challenge the constitutionality of a state statute as applied to their conduct. Rather, they challenge the constitutionality of the manner in which Defendants fund, administer, and oversee the State's indigent defense system in effort to control or prevent the

---

[205] *Id*. at 469 (quoting Perez v. Ledesma, 401 U.S. 82, 124-26 (1971) (Brennan, J., concurring in part and dissenting in part)).

[206] *Id*. at 475.

[207] *Id*. at 454.

[208] *Id*. at 469.

[209] *Id*.

[210] *Id*. at 462.

occurrence of specific events that might take place in the course of future state criminal trials.[211] The declaratory judgment Plaintiffs seek will not render Utah's Indigent Defense Act, or any provision therein, unconstitutional. It will not have any effect on Plaintiffs' underlying criminal cases—their cases will still proceed to disposition with the same public defenders representing them. The declaratory relief will not ensure the State's public defenders will render constitutionally effective assistance, or prohibit them from negotiating flat fee contracts with the State's counties and municipalities. The State's prosecutors will not be likely to stop pursuing charges against indigent defendants until corrections to the State's indigent defense system are made. Nor will the State's courts be likely to dismiss prosecutions against indigent defendants until corrections are made. Simply put, the declaratory relief will not terminate a controversy by remedying Plaintiffs' alleged injury.

A declaratory judgment could cause the State Legislature to take a hard look at Utah's Indigent Defense Act's funding, administration, and oversight provisions. It could also cause the State Legislature and the State's counties and municipalities to reconsider the use of flat fee contracts to retain public defenders. But again, Plaintiffs are not challenging the State's delegation of indigent defense services to its counties and municipalities.[212] Nor do they seek declaration that the use of flat fee contracts is unconstitutional *per se*. And the State Legislature has already acted by amending the Act in 2016 to create the Utah Indigent Defense Commission and an Indigent Defense Resources Restricted Account to address the issues with the indigent defense system that Plaintiffs raise.[213]

---

[211] Amended Complaint ¶¶ 198-231.

[212] Plaintiffs' Opposition at 8, 10.

[213] Utah Code Ann. §§ 77-32-801(1)-(2), 804(1), 805(2)-(5).

The declaratory relief Plaintiffs' seek is either mooted by the 2016 amendment, or prematurely determines that the amendment is insufficient to effectuate the changes to the State's indigent defense system Plaintiffs desire. On this record, it is speculative to assume the 2016 amendment will be insufficient, and it is speculative that the State Legislature would take additional action beyond the 2016 amendment if a declaratory judgment were entered.

Moreover, unlike *Steffel*, where no criminal prosecution was pending, Plaintiffs' underlying criminal cases are ongoing. A declaratory judgment, or any later injunctive relief (which Plaintiffs allude may be necessary[214]), may impermissibly interfere with the ongoing state criminal prosecutions.[215]

"Sensitive to principles of equity, comity, and federalism," the United States Supreme Court has recognized "that federal courts should ordinarily refrain from enjoining ongoing state criminal prosecutions."[216] "[A] pending state proceeding, in all but unusual cases, would provide the federal plaintiff with the necessary vehicle for vindicating his constitutional rights, and, in that circumstance, the restraining of an ongoing prosecution would entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility, equally with the federal courts to guard, enforce, and protect every right granted or secured by the constitution of the United States . . . ."[217] "[I]n cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken

---

[214] Plaintiffs' Opposition at 15.

[215] *O'Shea v. Littleton*, 414 U.S. 488, 500-502 (1974)

[216] *Steffel*, 415 U.S. at 460.

[217] *Id*. at 460-61 (internal quotations omitted).

into consideration by federal district courts in determining whether to issue a declaratory judgment . . . ."[218]

This is not the unusual case where a pending state proceeding will fail to provide Plaintiffs with the necessary vehicle allege to vindicate their constitutional rights. The precedent of both *Cronic* and *Strickland* dictate that Plaintiffs may pursue postconviction claims for an actual or constructive denial of their right to counsel in their criminal cases. This alternate avenue for relief is better suited to redress Plaintiffs' alleged injury.

Therefore, the declaratory relief Plaintiffs seek does not meet the standard for redressability.

Accordingly, because Plaintiffs fail to sufficiently allege and demonstrate an injury in fact and causation, and because the declaratory relief they seek does not meet the standard of redressability, Plaintiff lack standing.

---

[218] *Id*. at 461 (internal quotations omitted).

**ORDER**

IT IS HEREBY ORDERED that:

(1)     Defendants' Motion to Dismiss[219] is GRANTED;

(2)     Plaintiffs' Motion for Class Certification[220] is MOOT;

(3)     Movant Roger Bryner's Motion to Intervene[221] is MOOT; and

(4)     Plaintiffs' Motion to Lift Stay and for Entry of Scheduling Order Regarding

Plaintiffs' Motion for Class Certification[222] is MOOT.

The Clerk is directed to close the case.

Signed March 23, 2017.

BY THE COURT

_____

District Judge David Nuffer

---

[219] Docket no. 28, filed Aug. 5, 2016.

[220] Docket no. 16, filed July 26, 2016.

[221] Docket no. 59, filed Apr. 6, 2017.

[222] Docket no. 71, filed July 25, 2017.